## Hunter v. Quin, Mayor of the City of Louisville.

(Decided May 5, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Municipal Corporations—Mayor and Sewerage Commissioners May Sell Bonds Bearing Lesser Rate of Interest than Provided in Ordinance.—Under ordinance passed pursuant to Acts 1920, c. 86, providing for a bond issue for sewerage construction to bear interest at rate of 4½ per cent. per annum, and that mayor should issue, and that sewerage commissioners should sell, the bonds, mayor and sewerage commissioners had authority to sell bonds to bear a less rate of interest without enactment of an additional ordinance conferring such authority.

EMMET R. FIELD for appellant.

WM. T. BASKETT for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

At the November election, 1924, pursuant to an ordinance adopted by the general council and approved by

the mayor, the voters of the city of Louisville ratified a bond issue of $5,000,000.00, the proceeds of which are to be used in constructing and reconstructing sewers. That bond issue was held valid by this court in Hunter v. City of Louisville, 208 Ky. 446. Pursuant to the provisions of the enabling act, chapter 86, page 400, Acts of 1920, the ordinance submitting the proposed bond issue to the voters provided that the bonds should ''bear interest at the rate of 4½ per cent per annum.'' The ordinance provided that the mayor of the city should issue and that the commissioners of sewerage should sell the bonds. After it had been determined by this court that the proposed bond issue was valid and that the mayor had authority to issue and the sewerage commission had authority to sell the bonds in question, it was ascertained that, whereas the proposed bond issue ordinance provided that the bonds should bear interest at the rate of 4½ per cent per annum, due to the then state of the financial market, they might be sold at par and accrued interest bearing a lesser rate of interest. The question arose as to whether or not the mayor and the sewerage commission had authority so to do. To test the question the general council proposed to enact an ordinance providing that the bonds should bear ''not exceeding 4½ per cent per annum,'' and authorizing the mayor and the sewerage commission to issue and sell them at a lesser rate if possible. Appellant, a taxpayer of the city, acting for himself and the other taxpayers, objected to the adoption of the proposed ordinance or to the mayor and the commissioners of sewerage deviating from the terms of the bond issue ordinance under which they were authorized by the voters of the city in its interest provision. He contended that to do so would make the validity of the bonds ques tionable and affect their sale. The controversy was submitted to the Jefferson circuit court, chancery branch, second division, under the Declaratory Judgment Act, and under that proceeding the questions submitted for decision there, as well as here by the appeal, were: Since the bond issue ordinance provided that the bonds should bear interest at 4½ per cent per annum, can the mayor and board of sewerage commissioners issue and sell them to bear a less rate of interest? If so, have they authority to do so under the original bond issue ordinance or must the authority be conferred upon them by subsequent ordinance as is proposed? and, has the general council

now authority to enact the proposed ordinance authorizing the issual and sale of the bonds at a lesser rate of interest than 4½ per cent as fixed in the original ordinance?

Generally speaking we may say that constitutional and statutory provisions requiring that state and municipal enactments proposing bond issues shall fix the rate of interest the proposed bonds shall bear are in the nature of limitations upon the powers of those upon whom the authority to issue and sell the bonds is conferred. Those provisions are for the protection of the taxpayers and to prevent possible fraud. Those upon whom the authority is conferred to issue and sell the bonds are regarded in law as the agents of the sovereignty or municipality in the performance of that duty. The agent may not exceed the authority conferred upon him, and the ordinance fixing the amount of interest that the bonds shall bear limits his authority in that particular. In issuing and selling the bonds the agent may not go beyond the limit fixed. But if to the great benefit of his principal the agent may issue and sell the bonds at a lesser rate of interest than that fixed as the limit beyond which he may not go, no good reason suggests itself to this court why he should not be held to have authority to do so under the general principle that it is the agent's duty to protect and promote the interest of his principal. On that question, in Frantz, Jr., etc. v. Jacob, etc., 88 Ky. 525, this court has written:

"It is urged that the discretion vested in the mayor, as to whether the bonds shall bear interest at five or four per cent, is a delegation of legislative power, and therefore the ordinance is void. The council had fixed the maximum rate of interest at five per cent, but said to the mayor. if you can sell the bonds at a lower rate of interest, it is your duty to do so. The object of the ordinance is to raise this large sum of money, to be expended for municipal purposes. The amount is fixed, and the purpose of the expenditure is expressed in the ordinance, and there is no reason for holding the act of the mayor, who is the mere agent of the council or the city, *ultra vires,* because he makes a better bargain than that contemplated by the ordinance. If the agent exceeds the authority given him, by making the bonds bear a larger rate of interest than authorized by

the ordinance, his act would be void; but when he protects the interest of his principal, by making a better·bargain than authorized, his action is to be sustained, because it benefits the party for whom he is acting. This court, in the case of the Madison County Court v: Richmond, Irvine & Three Forks Railroad Co., 80 Ky. 16, held, when the order of the county court provided the bonds to be issued should bear eight per cent interest, and its action approved by the people, and the bonds were issued bearing six per cent, by the county judge, that the act being beneficial to the taxpayer, and the company to whom the subscription was made making no objection, the bonds were valid.''

The exact question here presented seems to have been involved in Omaha National Bank v. City of Omaha, 15 Neb. 333, 18 N. W. 63. A bond issue of $100,-000.00 had been voted, the ordinance submitting the question to the people for vote having provided that the bonds should bear interest at 6 per cent. When sold it was ascertained that they might be sold at par and accumulated interest bearing 5 per cent interest, and they were so sold. The purchaser sought to rescind the contract of sale, contending that the bonds were void because issued at a less rate of interest than voted. The court in disposing of the question said:

''The attorneys in the case have been unable to find any case bearing directly upon the question, and in our researches we have found none. The general rule is that all contracts made by municipal officers in excess of their powers are void, and the rule applies to municipal bonds. In the case under consideration, however, the power to issue bonds of the kind actually issued and sold was expressly conferred, except as to interest. Under that power bonds for a greater rate of interest than six per cent (6%) could not legally be issued because the greater rate of interest would be in excess of the authority conferred. . . . The object was to raise one hundred thousand dollars ($100,000.00). If this can be done for a less interest than the agents were authorized to pay, the city is benefited to that extent, and the contract is not *ultra vires*. It is a fundamental principle of the law of agency that it is the duty of the agent to protect and advance the interests of his principal. That the proper authorities

of the city of Omaha have done so in this case, and their acts in issuing the bonds in question being within the scope of their authority, the bonds are valid."

28 Cyc., page 1592, lays down the following general principle upon the question:

"The validity of municipal bonds will not be affected by the fact that they provide interest at a lesser rate than that which they are authorized to bear."

The enabling act under which the bond issue in question was submitted to the voters of Louisville stipulates that the ordinance proposing the bond issue shall provide the total amount of bonds to be issued, the date and maturity of the bonds and the rate of interest they shall bear, together with the necessary details in reference to the execution and delivery of the bonds, their denominations, interest coupons to be annexed, tax to be levied to pay the interest and a sinking fund to retire the bonds at maturity. Those provisions are required to be inserted into such ordinances in order that the voters may determine and by their votes declare whether or not they are willing to incur the indebtedness upon the terms proposed. The ratification of the proposed bond issue by their suffrage upon the terms proposed constitutes in effect a compact between the municipality and its agents of the one part and the taxpayers of the other part. The municipality and its agents may not then in issuing and selling the bonds exceed the authority granted to it and them. Any exceeding of the authority granted is invalid in that it violates the compact.

By section 12 of chapter 86, Acts of 1920, the enabling act for the bond issue, it is provided that if the voters of the city elect to incur the bonded debt the bonds when issued shall be placed under the control of the sewerage commission, who shall determine when and at what price and how they shall be sold, with the further limitation that no bonds shall be sold for less than par and that any premium obtained shall constitute a part of the sinking fund for their ultimate retirement. Thereby the sewerage commission was vested with authority to sell the bonds. In other words, that commission was made the agent of the city for the sale of the bonds. The bond issue ordinance and its approval by the voters, with ref-

erence to the rate of interest the bonds should bear, fixed 4½ per cent per annum as a limitation beyond which that commission in selling the bonds might not go. Nothing, however, as above pointed out, would prevent the agent of the city in its interest and to the advantage of its taxpayers from making a better bargain as to the interest rate than the limitation fixed. Since the bond issue involves $5,000,000.00 a fraction of one per cent reduction in the interest rate will mean many thousands of dollars saved for the taxpayers. Both the enabling act and the bond issue ordinance selected the city's agents to issue and dispose of the bonds. We, therefore, conclude that the bond issue ordinance which provided 4½ per cent per annum as the rate of interest which the bonds should bear was merely a limitation upon the power granted to the agents of the city in issuing and selling the bonds. Beyond that limit they can not go. If, however, in discharging the duties imposed upon them the agents of the city may make a better bargain for their principal by issuing and selling the bonds bearing a lesser rate of interest, under the authority given them by the enabling act and the ordinance in question, they have authority so to do. No additional ordinance of the general council is necessary to confer that authority upon them.

Since we have concluded that the agents of the city in issuing and selling the $5,000,000.00 of bonds authorized have authority under the original ordinance to issue and sell the bonds bearing a lesser rate of interest than that fixed in the ordinance no good reason suggests itself to the court as to why the proposed ordinance would or could affect the original ordinance under which the bond issue was submitted to the voters of the city. Since we have concluded that the proposed ordinance is unnecessary to confer the authority upon the mayor and sewerage commission to issue and sell the bonds bearing a lesser rate of interest than 4½ per cent, the enaction and approval of such an ordinance could play no part in determining the validity of the bonds when sold.

The chancellor adjudged that the general council has authority to enact the proposed ordinance; that, if properly passed and approved, it will confer authority upon the mayor to issue the bonds bearing interest at not exceeding 4½ per cent per annum; but that unless the general council enact and the mayor approve the proposed ordinance the mayor and sewerage commission

are without authority to issue and sell the bonds with a less rate of interest than 4½ per cent.

The judgment is erroneous in the particulars herein pointed out and is reversed and the cause remanded with direction that judgment be entered in conformity with this opinion.